UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 4:07 CR 355 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| JEAN F. PANAK, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Pending before the court is Defendant Jean F. Panak's ("Defendant") Motion to Suppress the statements she allegedly made to Drug Enforcement Agency ("DEA") investigators on February 15, 2006.  (ECF No. 14.)  The court held a hearing on Defendant's Motion on October 24, 2007. For the reasons set forth below, Defendant's Motion to Suppress is granted.

### **I. FACTUAL BACKGROUND**

Eric Zakrzewski ("Investigator Zakrzewski") is a diversion investigator with the DEA.  As such, he investigates the diversion of controlled substances from the legal market to the illegal market.  Investigator Zakrzewski identified Dr. Donald Chionchio ("Chionchio"), a 79-year-old dentist in the small town of Kinsman, Ohio, as the top purchaser of hydrocodone in the Northern Ohio area in the year 2004 based on a DEA database that shows the amount of legal drugs that are

ordered and sold.[1] Additionally, Chionchio ordered a significant amount of hydrocodone in 2005.

Based on this data, Investigator Zakrzewski's suspicions were raised. Therefore, accompanied by DEA Investigator Scott Brinks ("Investigator Brinks"), the investigators arrived unannounced at Chionchio's office on February 8, 2006, to inspect Chionchio's practice and examine his purchasing and dispensing records. Defendant, Chionchio's 77-year-old long-time receptionist and sole employee, was present during the one to two-hour onsite inspection and heard most or all of the conversation between Chionchio and the investigators. During the inspection, Chionchio admitted to the DEA investigators that he himself was abusing hydrocodone and prescribing the medication to himself. Chionchio also admitted that he frequently distributed hydrocodone to his patients without performing medical evaluations. Chionchio told the investigators that his office telephone system was set up so that the office telephone would also ring in Chionchio's home. Patients would call Chionhio's office, speak with Defendant, and ask for hydrocodone while Chionchio listened in at home. After the patients hung up, Chionchio would tell Defendant to give the patients the drugs "as long as they have the money" and would not perform medical evaluations on them before doing so.

Investigator Zakrzewski stated in the Suppression Hearing that he knew the admissions Chionchio made during the inspection constituted criminal activity. Based on these admissions, the agents asked Chionchio if he would surrender his DEA license so that he could no longer prescribe controlled substances to himself or others. Chionchio surrendered his DEA license, and the

---

[1] Vicodin is the brand name for hydrocodone; both drugs have the same active ingredients.

investigators then confiscated Chionchio's DEA certificate, his official DEA order forms, his log books, and any controlled substances that were in his office. The agents determined during the course of the inspection that Defendant maintained all of Chionchio's records relating to the distribution of hydrocodone and also distributed hydrocodone to patients at Chionchio's direction. The agents did not inform Chionchio of his constitutional right to remain silent and his right to counsel at any point during the onsite inspection or at any time prior to his indictment for the illegal possession and distribution of hydrocodone.

Investigators Zakrzewski and Brinks subsequently arrived unannounced at Defendant's house on February 15, 2006. Defendant was alone. According to Defendant, the first thing that investigators told her was "your boss is going to jail." The agents then asked Defendant if they could ask her some questions about Chionchio. Defendant stated that she did not want to answer their questions, but the investigators told her that it would "be to her benefit" to do so. Defendant states that she did not give the investigators permission to enter her home. The agents dispute that they told Defendant that Chionchio was going to jail, that Defendant stated that she did not want to answer their questions, and that Defendant did not invite the investigators into her home. It is undisputed that the interrogation in Defendant's home lasted 45 minutes to an hour. To the extent that the statements of the agents and Defendant are contradictory, the court credits the testimony of Defendant, whom the court found to be completely believable.

Defendant seeks to suppress several potentially incriminating statements she made during the interview in response to the investigators' questions, pointing to the DEA Form 6 summarization of the interview, written by Investigator Zakrzewski. (*See* Def.'s Mot. to Suppress, ECF No. 14, Ex. A.) The summarization indicates that Defendant stated: (1) Defendant knew several of Chionchio's

patients were receiving too much hydrocodone; (2) Defendant told Chionchio that he was dispensing too much pain medication; (3) Defendant suspected several patients had used their medical condition as an excuse to obtain more hydrocodone; (4) Defendant told Chionchio that she was "not going to jail" for him or anyone else; (5) Defendant suspected that a patient was also addicted to hydrocodone and might be selling his medication; (6) Chionchio had "cut off" other patients who abused hydrocodone, including one patient whose mother demanded that Chionchio not dispense any more drugs to her son; and (7) Chionchio rarely examined patients to whom he dispensed hydrocodone. (Gov't Opp'n to Mot. to Suppress at 3-4, citing Def.'s Ex. A.)  It is undisputed that the DEA investigators did not tell Defendant at any time during the interrogation that she had the right to remain silent and the right to counsel.  It is also undisputed that the investigators did not tell Defendant that she was not under arrest, nor that she was free to leave at any time.

On June 19, 2007, the Grand Jury charged Defendant with: (1) conspiracy to distribute and possess with intent to distribute hydrocodone in violation of 21 U.S.C. § 846; (2) possession with intent to distribute hydrocodone in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C.§ 841(b)(1)(D), and 18 U.S.C. § 2; and (3) distribution of hydrocodone in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C.§ 841(b)(1)(D), and 18 U.S.C. § 2. (ECF No. 1.)

Defendant argues that she reasonably believed she was not free to leave**.**  Consequently, Defendant now moves to have her statements suppressed because she was in custody, was interrogated by the investigators, and was not advised of her *Miranda* rights. (Def.'s Supression Mot.)  Additionally, Defendant argues that her statements should be suppressed because they were not voluntary. (*Id.*)

## II. LAW AND ANALYSIS

### A. Custodial Interrogation.

The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." CONST. AMEND. V. The Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), requires that a defendant must be warned that he has the right to remain silent, and that anything he says can be used against him in a court of law, when he is taken into custody and subjected to questioning. A defendant must also be told that he has the right to the presence of an attorney, and if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id.* This requirement is necessary "[i]n order to encourage compliance with this rule, incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her Miranda rights." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

*Miranda* warnings are required prior to custodial interrogation. Custodial interrogation is defined as, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In *Salvo*, the Sixth Circuit noted that, "[i]n applying Supreme Court precedent to questions of whether a defendant was 'in custody' for Miranda purposes, the Courts of Appeals have relied on a totality of circumstances approach to determine 'how a reasonable man in the suspect's position would have understood the situation.'" *Salvo*, 133 F.3d at 948 (quoting *United States v. Phillip*, 948 F.2d 241, 247 (6th Cir. 1991) (citations omitted)). In applying the totality of the circumstances test, the factors that courts have relied upon include:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody

>such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*Id.* at 950.  A reviewing court determines whether or not a defendant is in custody by "considering the 'objective circumstances of the interrogation,' rather than the 'subjective views harbored by either the interrogating officers or the person being questioned.'"  *Id.*

Under the totality of the circumstances in the current case, the court finds that the facts here establish that Defendant was subjected to custodial interrogation on February 15, 2006 .  First, as the Sixth Circuit observed in *Salvo,* 133 F.3d at 952, if a defendant "was given specific knowledge about the extent of the information the agents had acquired concerning his illegal activity," then this would be a factor weighing in favor of custody. Here, Defendant was given specific knowledge of the extent of the information that the investigators had acquired concerning Chionchio's and, by extension, Defendant's, alleged illegal activities because she was present during the inspection on February 8, 2006.  During the inspection, Defendant heard Chionchio make damning admissions that implicated himself and Defendant in criminal activities involving the distribution of hydrocodone. Chionchio gave up his DEA license and stood by while the investigators confiscated Chionchio's 2004 log books relating to hydrocodone - records that the DEA investigators knew were exclusively maintained by Defendant.

The agents argue, nevertheless, that Defendant was not in custody because Defendant was not a "target" of their investigation at the time they interviewed her.  However, the court assigns this declaration little weight since the agents clearly had information before the interview of the type

which was used to pursue charges against her, e.g., that she had personal knowledge of Dr. Chionchio's criminal conduct and, as his sole employee, she assisted him in that conduct by following his orders in helping to distribute hydrocodone under the circumstances he described to the agents. While the interview may have served to further implicate Dr. Chionchio, the agents also received further information regarding Defendant which they most likely knew would add to that which they already had implicating her. Moreover, they never told her during the course of the interview that she was free to leave or did not have to speak with them. As the Sixth Circuit stated: "a statement by a law enforcement officer to a suspect that he is not under arrest is an important part of the analysis of whether the suspect was 'in custody.'" *United States v. Swanson,* 341 F.3d 524, 530 (6th Cir. 2003) (citing *Salvo,* 133 F.3d at 951 (suspect not in custody where he was advised he was not under arrest and was free to leave at any time); *United States v. Sivils,* 960 F.2d 587, 598 (6th Cir. 1992) (defendant not in custody where he was informed before questioning that he was not under arrest); *United States v. Macklin,* 900 F.2d 948, 951 (6th Cir. 1990) (defendants were not in custody where they were told that they were not under arrest and were free to terminate questioning at any time). In fact, the *Swanson* court stated that this factor was the "most important to our analysis" in determining whether the defendant was in custody. *Swanson,* 341 F.3d at 530; *see also United States v. Protsman,* 74 Fed. App'x 529, 535 (6th Cir. 2003) (stating it was "key that [the defendant] ... was neither told he was under arrest nor threatened with arrest."). Here, the investigators never informed Defendant during the forty-five minute to one hour interrogation that she was not under arrest. The investigators did not tell Defendant that she was free to leave. The investigators did not inform Defendant that she did not have to speak with them. Indeed, the investigators ignored Defendant's statement that she did not want to speak with them. The

investigators told Defendant that her long-time employer was going to jail, and they implied that negative results would occur if she persisted in her refusal to be questioned.

These circumstances of this interrogation would cause a reasonable person in Defendant's position to conclude that she was not free to go. As a result, the court concludes that the Defendant was in custody. Although the questioning took place in Defendant's living room, the other facts and circumstances of Defendant's interrogation made that setting coercive. Therefore, Defendant was entitled to *Miranda* warnings. Since it is undisputed that Defendant was not given *Miranda* warnings before she was subjected to custodial interrogation, Defendant's Motion to Suppress is granted.

### B. Involuntary Statements.

The Fifth Amendment prohibits the prosecution's use of a defendant's compelled testimony. *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (1994) (citing *Oregon v. Elstad,* 470 U.S. 298, 306-07 (1985)). The Due Process Clause of the Fourteenth Amendment also prohibits the admission of coerced confessions. *Ledbetter,* 35 F.3d at 1067 (citing *Miller v. Fenton,* 474 U.S. 104, 109 (1985)).

The Sixth Circuit has held that "[e]ven if *Miranda* warnings are not required, a confession cannot be used if it is involuntary." *United States v. Macklin,* 900 F.2d 948, 951 (6th Cir. 2001) (citing *United States v. Washington,* 431 U.S. 181, 186-87 (1977); *Michigan v. Tucker,* 417 U.S. 433, 440-41 (1974)). When a defendant claims that incriminating statements were coerced by the government, the burden is on the government to prove, by a preponderance of the evidence, that the confession was voluntary. *United States v. Wrice,* 954 F.2d 406, 410 (6th Cir. 1992) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)). Here, Defendant argues that even if *Miranda* warnings were not required, her statements were not voluntary. This court declines to address this issue in light of

-8-

its determination that *Miranda* warnings were required, but not given.

### III. CONCLUSION

For the above-stated reasons, Defendant's Motion to Suppress (ECF No. 14 ) is granted.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

November 6, 2007